The order of the Court of Common Pleas is affirmed.[11]

is admissible to defend against a claim of future damages.

**Louis AIELLO, Respondent,**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Petitioner.**

Supreme Court of Pennsylvania.

Nov. 3, 1997.

G. Roger Bowers, Joan A. Zubras, Philadelphia, for petitioner.

***ORDER***

PER CURIAM.

AND NOW, this 3rd day of November, 1997, we **DENY** Petitioner's Petition for Allowance of Appeal, and **GRANT** Respondent's Cross-Petition for Allowance of Appeal **LIMITED** to the issue of whether evidence concerning a plaintiff's HIV infection

**COMMONWEALTH of Pennsylvania**

v.

**Orlando L. GREENE, Appellant.**

Superior Court of Pennsylvania.

Submitted June 9, 1997.

Filed Sept. 30, 1997.

Reargument Denied Dec. 12, 1997.

609 A.2d 785 (1992) (judgment of death affirmed where jury found aggravating circumstances that appellant created a grave risk of harm to others and appellant had a history of violent felonies, and as a mitigating circumstance that appellant suffered from severe mental or emotional disturbance); *Commonwealth v. Albrecht*, 510 Pa. 603, 511 A.2d 764 (1986) (sentence of death affirmed where jury found aggravating circumstance that appellant created grave risk of harm to others and as mitigating circumstances that appellant had no significant prior criminal history, that appellant suffered from severe mental or emotional disturbance and, under the catchall provision, that appellant was a 'good worker'); *and see also Commonwealth v. Reid*, 533 Pa. 508, 626

A.2d 118 (1993) (judgment of death affirmed where age of appellant younger than appellant in this case was found not to mitigate the crime, and jury found aggravating circumstances that appellant knowingly created a grave risk of harm to others and appellant had a significant history of violent felonies).

11. Pursuant to 42 Pa.C.S. § 9711(i), the prothonotary of this court is directed to immediately transmit to the Governor's office the file and complete record of the trial, sentencing hearing, imposition of sentence and review by the Supreme Court.

Eric E. Bononi, Greensburg, for appellant.

Rita D. Hathaway, Asst. Dist. Atty., Greensburg, for Commonwealth, appellee.

Before JOHNSON, SCHILLER and BROSKY, JJ.

BROSKY, Judge.

These consolidated appeals are from the orders of the lower court which imposed sentence and granted appellant leave to appeal from the judgment of sentence *nunc pro tunc* but otherwise denied appellant's request for collateral relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541–§ 9546.[1] Appellant presents the following issues for review: (1) whether the sentencing court misapplied the deadly weapon enhancement in imposing sentence; (2) whether the method of selecting the pool of prospective jurors deprived appellant of his federal and state constitutional rights to a trial by a jury of his peers; (3) whether the evidence was sufficient to sustain appellant's conspiracy conviction; (4) whether the trial court erred in admitting the hearsay statements of an alleged co-conspirator; (5) whether trial counsel was ineffective in failing to present an alibi defense; (6) whether trial counsel was ineffective in cross-examining the Commonwealth's witnesses; and (7) whether trial counsel was ineffective in failing to adequately preserve appellant's claims in post-trial motions. For the reasons set forth below, we vacate the judgment of sentence and remand for further proceedings consistent with this discussion.

This case has its genesis in a failed robbery attempt of Sobran's jewelry store on December 1, 1993. Following investigation, arrest warrants for appellant, Orlando Greene, and his brother, Daniel Greene, were issued. Appellant was ultimately apprehended in April of 1994. Daniel Greene was not arrested until July, 1994, however. Although appellant and his brother were to be tried jointly, Daniel entered a guilty plea.[2] Appellant filed an omnibus pre-trial motion which the trial court denied. Following a trial in February of 1995, the jury convicted appellant of the crimes of robbery,[3] criminal conspiracy[4] and receiving stolen property.[5]

The lower court sentenced appellant on March 30, 1995 to an aggregate period of ten and one-half (10 1/2) to twenty-one (21) years of imprisonment.[6] Post-sentencing motions were filed on appellant's behalf by trial counsel, Sharon Wigle, Esq. The trial court denied appellant's motions. Appellant asked counsel to file an appeal. However, the notice of appeal was defective and returned to Attorney Wigle. Counsel never refiled the notice of appeal.

New counsel, Eric Bononi, Esq. was subsequently appointed to represent appellant and filed a post-conviction petition on his behalf. After a hearing on the petition, the lower court reinstated appellant's right to a direct appeal *nunc pro tunc*, but otherwise denied his request for relief. Appellant timely appealed.[7]

---

1. The PCRA was amended by the Act of November 17, 1995, P.L. 1118, No. 32, § 1. Appellant's petition is governed by the amended version of the PCRA as it was filed on July 19, 1996, well after the amendments went into effect. *See* Act of November 17, 1995, P.L. 1118, No. 32, § 3(1) (providing that the amendments to sections 9542–9546 shall apply to petitions filed after the effective date of this act) and § 4 (act shall take effect in sixty days).

2. Daniel Greene was later permitted to withdraw his plea and was convicted following a jury trial. His convictions were subsequently upheld on appeal. *See Commonwealth v. Greene*, 455 Pa.Super. 672, 687 A.2d 855 (1996), *allocatur denied*, 548 Pa. 615, 693 A.2d 586 (1997).

3. 18 Pa.C.S.A. § 3701(a)(1)(ii).

4. 18 Pa.C.S.A. § 903(a).

5. 18 Pa.C.S.A. § 3925(a).

6. Appellant received a sentence of seven and one-half (7 1/2) to fifteen (15) years for his robbery conviction; appellant's minimum sentence included a twelve (12) month enhancement because of his co-conspirator's use of a weapon during the robbery. The sentences for appellant's remaining convictions were one and one-half (1 1/2) to three (3) years each in length. All of appellant's sentences were directed to run consecutively, thus resulting in the above aggregate sentence.

7. For reasons which are unclear, appellant filed two notices of appeal. The first is from the order disposing of his post-conviction petition and is docketed at No. 02093 Pittsburgh 1996. The second appeal is from the judgment of sentence and is docketed at No. 02094 Pittsburgh 1996. In view of the lower court's reinstatement of appellant's right to a direct appeal *nunc pro tunc*, appellant need only have filed an appeal from the judgment of sentence *nunc pro tunc*, as authorized by the post-conviction court's order. We

■ Appellant first challenges the trial court's application of the deadly weapon enhancement. This issue concerns the sentencing judge's application of the Sentencing Guidelines and, hence, implicates the discretionary aspects of sentence. *See, e.g., Commonwealth v. Bowen,* 417 Pa.Super. 340, 345 n. 3, 612 A.2d 512, 514 n. 3 (1992), *allocatur denied,* 533 Pa. 629, 621 A.2d 577 (1993) (regarding sentencing court's failure to apply deadly weapon enhancement as a challenge to the discretionary aspects of sentence). Unlike a challenge to the legality of sentence, there is no absolute right to direct appellate review of a discretionary sentencing claim. *Commonwealth v. Hoag,* 445 Pa.Super. 455, 458, 665 A.2d 1212, 1213 (1995). Rather, a party who desires to raise such matters must petition this court for permission to appeal and demonstrate that there is a substantial question that the sentence is inappropriate. 42 Pa.C.S.A. § 9781(b); *Commonwealth v. Hoag, supra; Commonwealth v. Dalberto,* 436 Pa.Super. 391, 402, 648 A.2d 16, 21 (1994), *allocatur denied,* 540 Pa. 594, 655 A.2d 983 (1995), *cert. denied,* — U.S. —, 116 S.Ct. 75, 133 L.Ed.2d 34 (1995).

In fulfilling this requirement, the party seeking to appeal must include in his or her brief a concise statement of the reasons relied upon in support of the petition for allowance of appeal. Pa.R.A.P., Rule 2119(f), 42 Pa.C.S.A.; *Commonwealth v. Saranchak,* 544 Pa. 158, 176, 675 A.2d 268, 277 (1996), *cert. denied,* — U.S. —, 117 S.Ct. 695, 136 L.Ed.2d 617 (1997); *Commonwealth v. Dalberto, supra.* Appellant has failed to comply with this requisite here. While this omission ordinarily would preclude our review of his claim, the Commonwealth has not objected to this defect. We will accordingly ascertain whether a substantial question exists based on the allegations set forth in appellant's brief. *Commonwealth v. Fusco,* 406 Pa.Super. 351, 354, 594 A.2d 373, 374 (1991).

■ The determination of whether a substantial question exists must be made on a case-by-case basis. *Commonwealth v. Koren,* 435 Pa.Super. 499, 503, 646 A.2d 1205,

1207 (1994). It is only where an aggrieved party can articulate clear reasons why the sentence issued by the trial court compromises the sentencing scheme as a whole that we will find a substantial question and review the decision of the trial court. *Commonwealth v. Dalberto,* 436 Pa.Super. at 402, 648 A.2d at 22; *Commonwealth v. Koren,* 435 Pa.Super. at 503, 646 A.2d at 1207–1208. This court has been inclined to find that a substantial question exists where the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms underlying the sentencing process. *Commonwealth v. Dalberto, supra; Commonwealth v. Koren,* 435 Pa.Super. at 503–504, 646 A.2d at 1208.

■ Appellant questions the sentencing court's application of the deadly weapon enhancement. We have consistently deemed similar claims to present a substantial question for review. *See Commonwealth v. Bowen, supra* (trial court's refusal to apply deadly weapon enhancement raised a substantial question for review). We will therefore address the merits of appellant's sentencing claim.

The standard of review in sentencing matters is well settled. Imposition of a sentence is vested in the discretion of the sentencing court[, whose decision] will not be disturbed absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment.... [O]n appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Smith,* 543 Pa. 566, 570–571, 673 A.2d 893, 895 (1996) (citations omitted). We will examine the sentencing court's decision and appellant's arguments in light of this standard.

Appellant asserts that he is not subject to the deadly weapon enhancement because the

___

will thus dismiss the appeal docketed at No. 02093 Pittsburgh 1996 as moot. Given the procedural posture of this case, we will evaluate

appellant's claims in the context of a direct appeal from the judgment of sentence.

gun was not on his person or within his immediate physical control at the time of the robbery. Appellant's Brief at 13–14. We are constrained to agree. To facilitate our analysis of this issue, it is first necessary to review the circumstances giving rise to appellant's sentence and the law pertinent thereto.

Prior to sentencing, the Commonwealth advised appellant of its intent to request imposition of a mandatory minimum sentence pursuant to 42 Pa.C.S.A. § 9712(a). At the time appellant was sentenced, this statute provided that any person convicted of, *inter* § 3701(a)(1)(ii), was to receive a minimum sentence of at least five years if he or she visibly possessed a firearm or replica thereof during the commission of the crime. 42 Pa. C.S.A. § 9712(a).[8] In construing this provision, this court has held that an unarmed accomplice may be subject to the mandatory minimum sentence if he had knowledge that his co-felon visibly possessed a firearm during the crime. *See Commonwealth v. Matos,* 382 Pa.Super. 401, 405, 555 A.2d 901, 903 (1989), *allocatur denied,* 525 Pa. 597, 575 A.2d 563 (1990) and the authorities cited therein.

However, the sentencing court did not impose the mandatory minimum sentence in this case. Rather, the sentencing court properly compared the mandatory minimum sentence with the minimum sentence recommended by the sentencing guidelines. *See Commonwealth v. Morgan,* 425 Pa.Super. 344, 353–354, 625 A.2d 80, 84–85, *allocatur denied,* 535 Pa. 667, 634 A.2d 1115 (1993) (sentencing court must consider both the mandatory minimum sentence and the guidelines sentence where the guidelines suggest a longer sentence than the mandatory minimum required). Upon making this comparison, it is evident that the standard and aggravated ranges of the guidelines exceed the mandatory minimum sentence, even without application of the deadly weapon enhancement. *See* 204 Pa.Code § 303.9 (March 1992).[9] The sentencing court thus properly exercised its discretion to impose the guidelines sentence rather than the mandatory minimum sentence.

▇ Before the deadly weapon enhancement can be applied to a guidelines sentence, the sentencing judge must first determine whether the defendant possessed a deadly weapon during the commission of the current conviction offense. 204 Pa.Code § 303.4(a) (March 1992). For purposes of this section, the term "possessed" is statutorily defined to mean that the firearm was "on the defendant's person or within his immediate physical control." 42 Pa.C.S.A. § 2154(b). As construed by this court, "this provision reflects a limitation on the imposition of the deadly weapon enhancement and precludes use of it in situations wherein only a defendant's accomplice possesses the weapon and the weapon used is not within the defendant's immediate physical control." *Commonwealth v. Bowen,* 417 Pa.Super. at 346–347, 612 A.2d at 515.

In this case, the sentencing court concluded that because appellant had knowledge that Octavius Settles visibly possessed a firearm during the robbery, he was subject to

---

**8.** The statute was subsequently amended by the Act of June 13, 1995, P.L. 1024, No. 17 (Special Session No. 1), § 11, and the Act of October 11, 1995, P.L. 1058, No. 21 (Special Session No. 1), § 3. The amendments do not govern our disposition as they apply only to offenses committed on or after the effective date of the act. Act of October 1, 1995, *supra* at § 6. Accordingly, our citation is to the prior version of the statute.

**9.** The Sentencing Guidelines were amended and revised after appellant committed the crimes for which he was sentenced. Consequently, the amendments which went into effect prior to December 1, 1993 are applicable to appellant whereas the amendments which became effective after this date are not. *See* 204 Pa.Code § 303.1(c) (August 1997) (amendments to the guidelines shall apply to all offenses committed on or after the effective date the amendment becomes part of the guidelines). We will therefore utilize the guidelines in effect at the time the crimes were committed.

Appellant had a prior record score of six. The crime of robbery carried an offense gravity score of seven. 204 Pa. Code § 303.8 (March 1992). Consequently, the minimum sentencing ranges applicable to appellant for the crime of robbery, absent the deadly weapon enhancement, were as follows:

| Standard | Aggravated | Mitigated |
|----------|------------|-----------|
| 43-64 | 64-80 | 32-43 |

204 Pa. Code § 303.9 (March 1992).

the deadly weapon enhancement. Trial Court Opinion, filed 11/1/95, at 10. The sentencing judge thus extended the holding of *Commonwealth v. Matos* to a guidelines sentence in contravention of section 2154(b) and *Commonwealth v. Bowen. Id.* at 10–11. The sentencing court did not cite any authority for its novel decision other than to note that "to allow ... [appell]ant to escape the weapons enhancement would be unconscionable." *Id.* at 11.

We empathize with the trial judge's frustration at the seemingly disparate treatment of unarmed accomplices arising under the mandatory minimum sentencing provisions and the deadly weapon enhancement portions of the sentencing guidelines. Nevertheless, once the sentencing judge decided to impose the guidelines sentence rather than the mandatory minimum sentence, he was obliged to follow the pertinent law as set forth in section 2154(b) and *Commonwealth v. Bowen, supra.* Application of the proper authority compels us to conclude that the deadly weapon enhancement is inapplicable in this case because the gun was neither on appellant's person nor within his immediate physical control at any time during the perpetration of the robbery. As the sentencing court held otherwise, we vacate the sentence and remand for resentencing in a manner consistent with our discussion.[10]

█ Appellant next contends that the trial court's method of selecting prospective jurors is constitutionally invalid because it did not result in an array of individuals who share appellant's race and age.[11]

It is well settled that a criminal defendant may not attack the racial composition of jury panels drawn from voter registration lists on the theory that blacks are underrepresented in voter lists.... In order to establish a prima facie violation of the requirement that the jury array fairly represent the community, a defendant must show that: (1) the group allegedly exclud-

ed is a distinctive group in the community; (2) the representation of this group in veniries from which juries are selected is not fair and reasonable in relation to the number of such people in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. Systematic means caused by or inherent in the system by which juries were selected.

*Commonwealth v. Craver,* 547 Pa. 17, 28, 688 A.2d 691, 696 (1997), (petition for certiorari filed 5/28/97, No. 96–9188) (citations and quotation marks omitted).

█ Appellant presented no evidence to the lower court regarding any of the three elements outlined in *Craver.* Appellant has likewise failed to provide us with such information on appeal. However, we note that Marlyn Davis, one of the Jury Commissioners of Westmoreland County, testified prior to appellant's trial that prospective jurors are selected from a master list of names compiled from Pennsylvania Driver's Licenses and Voter Registration lists. N.T. 2/1–3/95 at 208–209. Race, age, gender or other characteristics are not identified in these lists. *Id.* at 209–210. Consequently, it is not possible to discriminate against individuals on any of these grounds. *Id.* at 209. Ms. Davis further indicated that, based on census data, approximately one and one-half percent (1 1/2%) of Westmoreland County residents were members of the African–American race.

In view of Ms. Davis' testimony, it is evident that Westmoreland County utilizes non-discriminatory driver's license and voter registration lists as a means of selecting prospective jurors. Our Supreme Court has approved the use of these sources to compile a jury array. *Commonwealth v. Craver, supra.* More importantly, not a scintilla of evidence has been proffered which would even remotely suggest that Westmoreland County systematically excludes from the jury

---

10. In reaching this conclusion, we do not suggest that the length of the sentence imposed by the trial court is inappropriate. The trial judge is thus free to reimpose either the same term or any other appropriate sentence upon remand, provided that his rationale for doing so is consistent with Pennsylvania jurisprudence.

11. Appellant characterizes himself as a thirty year old African–American male. Appellant's Brief at 16.

pool those persons who share appellant's ethnic, gender and age characteristics. To the extent underrepresentation may be said to exist, it is attributable to the fact that only a small portion of the county's residents possess the particular traits cited by appellant. Hence, appellant is not entitled to a new trial on this basis.

■ Appellant's third allegation of error concerns the sufficiency of the evidence relating to his criminal conspiracy conviction.

In determining whether the Commonwealth has met its burden of proof, the test to be applied is: [w]hether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548, 549 (1992) (citations and quotation marks omitted).

■ To prove the existence of a conspiracy, the Commonwealth must show an agreement or common design to commit an unlawful act. *Commonwealth v. Dancy*, 437 Pa.Super. 462, 469, 650 A.2d 448, 451 (1994), *allocatur denied*, 540 Pa. 646, 659 A.2d 985 (1995).

The existence of an agreement ... need not be express, but rather, may be inferred from the surrounding circumstances. An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Commonwealth v. Mercado*, 420 Pa.Super. 588, 594–595, 617 A.2d 342, 345–346 (1992) (citation omitted). "Mere presence at the scene of the crime, however, is not enough. The Commonwealth must show that the accused was an active participant in the criminal enterprise." *Commonwealth v. Dancy*, 437 Pa.Super. at 470, 650 A.2d at 452 (citations omitted). We will consider the evidence presented by the Commonwealth and appellant's arguments mindful of these principles.

The record reflects that appellant and his brother visited Sobran's jewelry store on Saturday, November 27th for the ostensible purpose of purchasing an engagement ring for Daniel Greene's fiancee. N.T. 2/1–3/97 at 272–274 and 293–294. Despite the avowed interest in finding an engagement ring, Daniel Greene stood by the case containing men's rings, peered into a back room of the store and commented on the presence of the security system. *Id.* at 279 and 297. The men thereafter left. Disconcerted by the behavior of the Greene brothers, John Sobran and his wife, Cynthia, obtained the license number of the Greenes' vehicle and reported the incident to the police.[12] *Id.* at 279–283, 297–298 and 345.

After visiting the store on Saturday, Daniel Greene approached Octavius Settles and inquired as to whether he would participate in a robbery of the Sobrans' jewelry store along with the Greenes.[13] *Id.* at 219–221. Octavius agreed. *Id.* at 220. Appellant picked up Octavius and Daniel Greene at Evelyn Settles' residence on November 30th. *Id.* at 224. As the group traveled to the

---

12. This vehicle, a red Datsun, was found to be registered to Jacqueline Andrews. *Id.* at 266, 345–346 and 348–349. Ms. Andrews testified that although the vehicle was registered in her name for insurance purposes, it was actually owned by appellant. *Id.* at 266–267.

13. Octavius Settles was a fifteen year old juvenile, who was residing with his sister, Evelyn Settles, at the time of the robbery. *Id.* at 214–215. Ms. Settles' was Daniel Greene's fiancee and the couple have several children together. *Id.* at 482–483.

jewelry store, appellant and Daniel Greene told Octavius "not to be nervous" and to go in and "do the job." *Id.* at 225. Appellant and Daniel further explained that they had visited the store the previous Saturday and apprised Octavius of the layout of the store. *Id.* at 225–226. Daniel Greene also gave Octavius a .357 magnum Smith & Wesson handgun and instructed him as to how he should handle the weapon. *Id.* at 219 and 226.

Upon their arrival in the area, appellant pulled into the driveway of Elaine Bargerstock's home. *Id.* at 227 and 461–462. Mrs. Bargerstock saw the Greenes and Octavius seated in a small red car.[14] *Id.* at 227 and 463–465. As a result of their discovery by Mrs. Bargerstock, the Greenes decided to forego the robbery and left the area. *Id.* at 227 and 465–466.

The next day, appellant informed Daniel that his vehicle would not start. *Id.* at 228. Daniel told appellant that the group would meet at the home of Daniel's former girlfriend. *Id.* Upon their arrival, appellant stole a two-tone gray Toronado owned by Jacquetta Neal.[15] *Id.* at 228 and 439. The trio then returned to Sobrans' jewelry store. *Id.* at 229.

While en route, the Greenes repeated their admonishments to Octavius. *Id.* at 231. In addition, the Greenes indicated that Octavius should ask to see the diamond ring which appellant had examined on his prior trip, pull out the gun and demand more jewelry. *Id.* The Greenes left Octavius off in the vicinity of the jewelry store and drove to a nearby Dairy Queen to await his return. *Id.*

Octavius entered the jewelry store and asked to see a ring. *Id.* at 233. After examining the ring and returning it to John Sobran's mother, Lena, Octavius pulled out the gun and threatened to shoot her. *Id.* at 233–234. Lena Sobran pushed Octavius away, causing him to fall. *Id.* at 234 and 328.

As he stumbled, he was shot in the back by John Sobran.[16] *Id.* at 234, 317–318 and 328.

Octavius related that on the day of the robbery, Daniel Greene was wearing gold-colored overalls. *Id.* at 235. Melissa Henry, a Dairy Queen employee, and Charles Pitek, the tow truck operator, both described seeing an African–American male wearing gold overalls, although neither witness was able to specifically identify either of the Greene brothers. *Id.* at 448–449, 452, 453, 456–457 and 458. Mr. Pitek testified that he spoke with Daniel Greene, who informed him that he was accompanied by his brother, *i.e.*, appellant. *Id.* at 448. In addition, Ms. Henry was able to identify the two-tone car which the Greenes drove to the scene. *Id.* at 454–455 and 457–458. The same vehicle was later found abandoned by the police approximately one and one-half miles from the jewelry store. *Id.* at 350.

Appellant posits that the above evidence was insufficient to show that he was aware of his brother's and Octavius' plot to rob the jewelry store. Appellant's Brief at 19. Contrary to appellant's assessment, appellant's and his brother's conduct on the first visit to the jewelry store suggested that the men had a plan to rob the jewelry store. While appellant was not privy to the initial conversation between Daniel and Octavius a few days later, his awareness of the plot was amply demonstrated by the evidence. Appellant made not one, but two trips with Octavius and Daniel Greene to the jewelry store. On the first of these visits, appellant drove his vehicle, which was later identified by Mrs. Bargerstock and Ms. Andrews.

In addition, Octavius related that he was given the gun and instructed on how to use it by Daniel Greene during the trips to the jewelry store. More importantly, Octavius indicated that he was told of the store layout and the manner in which he should accom-

---

**14.** The vehicle seen and later identified by Mrs. Bargerstock was the same car which was registered to Jacqueline Andrews and owned by appellant. *Id.* at 266–267, 348–349 and 468–469.

**15.** Ms. Neal was acquainted with Daniel Greene because he had previously dated her sister. *Id.* at 439. In addition, Daniel Greene was familiar

with Ms. Neal's car as she had driven him to the grocery store on a prior occasion. *Id.* at 441–442.

**16.** Octavius is permanently paralyzed as a result of the injuries he sustained during the failed robbery.

plish the crime by appellant as well as Daniel Greene. Appellant's conduct in stealing Ms. Neal's car further evinces his awareness of and intent to facilitate the robbery. Finally, appellant and his brother were observed together in Ms. Neal's car while the robbery was in progress, following which appellant and his brother fled together after Octavius failed to return. Given these circumstances, the evidence was more than sufficient to show that appellant conspired with Daniel Greene and Octavius Settles to rob the jewelry store. *See Commonwealth v. Diehl,* 402 Pa.Super. 12, 16–17, 585 A.2d 1112, 1114–1115 (1991) (evidence that co-conspirators discussed proposed burglary of store in defendant's presence and that defendant drove the others to and from the scene of the crime was sufficient to sustain the defendant's conspiracy conviction).

▆▆▆▆ In his fourth issue, appellant asserts that the trial judge erred in admitting into evidence the hearsay statements made by Daniel Greene to Octavius Settles. In reviewing this issue, we are guided by the rule of law that the admissibility of evidence is a matter addressed to the sound discretion of the trial court, which may only be reversed upon a showing that the trial court abused its discretion. *Commonwealth v. Mayhue,* 536 Pa. 271, 292, 639 A.2d 421, 431 (1994). Pursuant to this standard, we find that the statements in question were properly admitted pursuant to the co-conspirator's exception to the hearsay rule.

Under th[e] [co-conspirator] exception, the out of court declarations of a co-conspirator may be introduced against another co-conspirator provided three requirements are satisfied. [First,] [t]he prosecution must prove the existence of a conspiracy between the declarant and the defendant against whom the evidence is being offered. Once this requirement is satisfied[,] the Commonwealth must show that the statements were made during the course of the conspiracy, and finally that the statements were made in furtherance of the common design.

\* \* \*

The Commonwealth is only required to prove the existence of a conspiracy by a fair preponderance of the evidence. In addition, the Commonwealth need not establish such a preponderance by direct evidence. Rather, a conspiracy, for purposes of the co-conspirator exception, may be inferentially established by showing the relation, conduct or circumstances of the parties.

*Commonwealth v. Mayhue,* 536 Pa. at 292–293, 639 A.2d at 431–432 (citations omitted). *Accord Commonwealth v. Fox,* 422 Pa.Super. 224, 237, 619 A.2d 327, 334, *allocatur denied,* 535 Pa. 659, 634 A.2d 222 (1993). Moreover, the order of proof in these matters is within the discretion of the trial court. *Commonwealth v. Scarfo,* 416 Pa.Super. 329, 397, 611 A.2d 242, 276 (1992), *allocatur denied,* 535 Pa. 633, 631 A.2d 1006 (1993).

▆▆▆▆ As previously discussed in connection with appellant's third claim, we found that the evidence was more than sufficient to prove the existence of a conspiracy to rob the jewelry store between appellant, Daniel Greene and Octavius Settles. Accordingly, the first element has been met. The remaining requisites were likewise satisfied. Daniel's statements all concerned the commission of the robbery and, thus, may be viewed as being made in furtherance of the common design. Moreover, the statements were made during the course of the conspiracy because, as we noted, appellant's and Daniel Greene's conduct during their initial visit to the jewelry store suggested that they were planning the robbery. Consequently, the trial court did not abuse its discretion by admitting Daniel Greene's hearsay statements.

▆▆▆▆ Appellant's remaining claims each touch upon the alleged ineffectiveness of trial counsel, Attorney Wigle.

The threshold inquiry in ineffectiveness of counsel claims is whether the issue/argument/ tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be ineffective for failing to assert a meritless claim. Once this threshold is met[,] we apply the reasonable basis test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the

particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective. If we determine that there was no reasonable basis for counsel's chosen course[,] then the accused must demonstrate that counsel's ineffectiveness worked to his prejudice. The burden of establishing counsel's ineffectiveness is on the [defend]ant because counsel's stewardship of the trial is presumptively effective. *Commonwealth v. Wilson*, 543 Pa. 429, 440, 672 A.2d 293, 298, *cert. denied*, —— U.S. ——, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996) (citation and quotation marks omitted). "Prejudice in this context has been defined to mean that [a]ppellant must establish that but for the arguably ineffective act or omission[,] there is a reasonable probability that the result would have been different." *Commonwealth v. Crawley*, 541 Pa. 408, 414, 663 A.2d 676, 679 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1832, 134 L.Ed.2d 936 (1996). Where it is clear that a defendant has failed to meet the prejudice prong, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Wilson, supra.* Moreover, counsel is to be deemed effective if any reasonable basis exists for his actions. *Commonwealth v. Douglas*, 537 Pa. 588, 598, 645 A.2d 226, 231 (1994). We will evaluate appellant's claims mindful of these considerations.

■ Appellant's first allegation of ineffectiveness relates to trial counsel's alleged failure to assert an alibi defense on appellant's behalf in a timely manner. At the evidentiary hearing on the allegations of ineffectiveness, appellant claimed that he had informed trial counsel of his alibi defense months before his trial. Post–Conviction Evidentiary Hearing Transcript, 10/22/96 at 18–19. However, the lower court expressly found that appellant was not a credible witness. Trial Court Opinion, filed 10/31/96, at 3–4.

Although trial counsel was not called to testify at the evidentiary hearing, her testimony was unnecessary, as she may be deemed effective if any reasonable basis for her actions is apparent from the record. *Commonwealth v. Yager*, 454 Pa.Super. 428,

442, 685 A.2d 1000, 1006 (1996) (*en banc*). In this case, the record reflects that trial counsel raised the alibi issue prior to the commencement of appellant's trial. Attorney Wigle informed the trial court that on the day prior to trial, she first learned of appellant's potential alibi witness, Otis Mickens. N.T. 2/1–3/97 at 50–51. According to counsel, Mr. Mickens could only offer a partial alibi defense regarding appellant's whereabouts on the day of the robbery. *Id.* at 50–52. Essentially, trial counsel indicated that Mr. Mickens would testify that he and appellant were working on a construction job from December 1 through December 18, 1993. *Id.* at 52. As a result, the trial court precluded appellant from introducing evidence pertaining to his alibi. *Id.* at 56.

■ Where a post-conviction court's credibility determination is supported by the record, as it is here, it is binding on the appellate court. *Commonwealth v. Yager*, 454 Pa.Super. at 440, 685 A.2d at 1005. In view of the lower court's credibility determination and trial counsel's explanation that she was not apprised of the existence of the potential alibi witness until the day before trial, trial counsel was not ineffective on this basis.

■ Appellant's penultimate challenge relates to trial counsel's alleged failure to adequately cross-examine three of the Commonwealth's witnesses, Octavius Settles, John Sobran and Elaine Bargerstock. With regard to Settles and Mrs. Bargerstock, review of the trial transcript reveals that the discrepancies of which appellant complains arose out of the witnesses' confusion of the matters which were the subject of the interrogation. Had trial counsel cross-examined the witnesses on these inconsistencies, she ran the risk of clarifying the witnesses' testimony. By declining such interrogation, however, she could point out these differences to the jury in closing argument and, thus, hope to persuade the jury that the witnesses lacked credibility.

Moreover, trial counsel did attempt to impeach the credibility of these witnesses, albeit on other grounds. Specifically, evidence was introduced demonstrating that Octavius

Settles committed the robbery on his own as part of his attempts to join a gang. N.T. 2/1–3/97 at 480–484, 495–496, 537, 538–539 and 543–544. Trial counsel likewise sought to impeach Mrs. Bargerstock by attacking her ability to identify the vehicle and persons whom she observed in her driveway the day before the robbery. *Id.* at 472–474.

Notwithstanding counsel's efforts, the jury evidently deemed these witnesses to be credible and rejected appellant's version of the incident. Having thoroughly reviewed the trial transcript, we are not persuaded that cross-examination into the areas suggested by appellant would have met with any greater success than the avenues actually pursued by trial counsel. Accordingly, we decline to find that she was ineffective in failing to cross-examine these witnesses. *See Commonwealth v. Douglas* and *Commonwealth v. Yager, supra* (counsel may be deemed effective if any reasonable basis for her actions is apparent from the record); *Commonwealth v. Thuy,* 424 Pa.Super. 482, 489, 623 A.2d 327, 331 (1993) (a decision by counsel not to take a particular action does not constitute ineffective assistance if that decision was reasonably based, and was not the result of sloth or ignorance of available alternatives).

■ We reach a similar conclusion with respect to trial counsel's alleged failure to impeach John Sobran. First, appellant has failed to substantiate his assertion with reference to specific inconsistencies in his testimony. Because the certified record does not contain a copy of the preliminary hearing transcript, it is impossible for this court to ascertain whether trial counsel may have been ineffective.

Even were we to assume, purely for the sake of argument, that appellant's underlying claim has merit, we nonetheless observe that John Sobran's testimony was in large part cumulative to that provided by his wife and mother. Given the fact that John's testimony was corroborated by two other witnesses who were obviously found credible by the jury, we cannot conclude that there is a reasonable probability that the result would have been different but for counsel's alleged omission. Because appellant was not preju-

diced by counsel's alleged inaction, no relief is due.

■ Appellant finally argues that trial counsel was ineffective in failing to adequately preserve his claims for appellate review in post-trial motions. Because appellant was convicted after the amendments to the Pennsylvania Rules of Criminal Procedure went into effect, he was not required to file post-verdict motions in order to preserve his claims for appeal. *See* Pa.R.Crim.P., Rule 1410 B(1)(c), 42 Pa.C.S.A. (issues raised before or during trial shall be deemed preserved for appeal whether or not the defendant elects to file a post-sentence motion on those issues). With the exception of his challenge to the weight of the evidence, appellant therefore was not prejudiced by trial counsel's failure to adequately preserve his claims via post-sentencing motions.

Regarding appellant's challenge to the weight of the evidence, our Supreme Court has recognized that such claims must be addressed in the first instance by the trial court. *Commonwealth v. Widmer,* 547 Pa. 137, 138–140, 689 A.2d 211, 212 (1997). Although trial counsel did raise this issue, she improperly commingled it with her attack on the sufficiency of the evidence. As a result, the trial court confined its analysis to appellant's sufficiency claim and did not consider the discrete issue of whether the verdict was against the weight of the evidence. *See* Trial Court Opinion, filed 11/1/95, at 5.

Based on the above review of the record, it appears that appellant's underlying ineffectiveness claim has merit and that there was no reasonable basis for trial counsel's failure to properly present this issue. Moreover, it is not possible for us to ascertain whether appellant was prejudiced by trial counsel's action, as the trial court did not consider the merits of the issue. Given the posture of this case, and because we have previously determined that it is necessary to remand this matter for resentencing, we direct the trial court on remand to permit appellant to file a post-sentencing motion, *nunc pro tunc,* limited to appellant's weight of the evidence claim. *See Commonwealth v. Widmer,* 547 Pa. at 138–140, 689 A.2d at 212 (remanding case to the trial court to allow the defendant

to file a motion for new trial *nunc pro tunc* challenging the weight of the evidence). In the event the trial court deems the issue to be meritorious, appellant's motion for a new trial must be granted. Conversely, if the trial judge finds the claim to be meritless, appellant is to be re-sentenced in a manner consistent with our foregoing analysis of appellant's sentencing claim.

Judgment of sentence vacated. Remanded with directives. Jurisdiction relinquished. Appeal at No. 02093 Pittsburgh 1996 dismissed as moot.

SCHILLER, J., files a dissenting opinion.

SCHILLER, Judge, dissenting.

I respectfully dissent. First, I feel that the rationale of this Court's prior decisions holding that an accomplice may be subject to the mandatory minimum provisions of 42 Pa. C.S. § 9712 [1] dictates a similar result for the deadly weapon enhancement under the sentencing guidelines. Second, I disagree with the determination that appellant is entitled to file a post-sentence motion, *nunc pro tunc*, to present his weight of the evidence claim to the trial court. This decision is based on trial counsel's alleged ineffectiveness in failing to file a post-sentence motion raising this issue. However, because this claim is brought under the guise of ineffectiveness, this Court must make a preliminary evaluation of the merits of this issue before we grant appellant relief. To do otherwise is to effectively allow all defendants whose counsel elected not to file optional post-sentence motions [2] to have a second chance without regard to the merits of the underlying issue.

As a rule, this Court cannot decide a weight of the evidence claim without the trial court first reaching the issue.[3] However, when the issue is brought under the guise of an ineffectiveness claim we must examine the merits of the weight of the evidence claim before we can grant appellant relief. The record in this case reveals that there was testimony from Octavius Settles, the juvenile who attempted to rob the Sobrans' jewelry store, implicating appellant as a co-conspirator in the robbery. Additionally, Cynthia and John Sobran testified that appellant was in their jewelry store a few days before the robbery, and John Sobran added that Octavius Settles admitted that appellant was down the road at a Dairy Queen during the robbery. There was also testimony from several other witnesses describing the car appellant was driving on the day of the robbery, and placing him at the Dairy Queen near the jewelry store. The only testimony presented by the defense regarding the events surrounding the robbery was the testimony of appellant, who denied any involvement with Settles or the robbery. The jury obviously chose not to believe appellant.[4] Given this significant amount of evidence on behalf of the Commonwealth, I see no merit to appellant's claim that the guilty verdict was contrary to the weight of the evidence, and appellant's counsel cannot be held to have been ineffective for failing to raise a meritless issue in his post-sentence motion. Accordingly, in my view it is not necessary for us to remand appellant's weight of the evidence issue to the trial court.

1. *See Commonwealth v. Williams,* 353 Pa.Super. 312, 509 A.2d 1292 (1986); *Commonwealth v. Grimmitt,* 354 Pa.Super. 463, 512 A.2d 43 (1986); *Commonwealth v. Matos,* 382 Pa.Super. 401, 555 A.2d 901 (1989), *alloc. denied,* 525 Pa. 597, 575 A.2d 563 (1990).

2. *See* Pa.R.Crim.P 1410.

3. This is so because a weight of the evidence claim is directed to the discretion of the trial court, i.e. whether the verdict was so contrary to the evidence as to shock one's sense of justice, and appellate review of such a claim is a review of the trial court's discretion, and not an actual review of weight of the evidence. *Commonwealth v. Brown,* 538 Pa. 410, 435–39, 648 A.2d 1177, 1189, 1191 (1994).

4. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed by this Court on appeal if they are supported by the record. *Commonwealth v. Rochon,* 398 Pa.Super. 494, 581 A.2d 239 (1990).