J-S29035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MALAKIA ANTON JACKSON :
:
Appellant : No. 1630 MDA 2022

Appeal from the PCRA Order Entered October 25, 2022
In the Court of Common Pleas of Huntingdon County Criminal Division at
No(s): CP-31-CR-0000055-2017

BEFORE: MURRAY, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED SEPTEMBER 07, 2023**

Appellant, Malakia Anton Jackson, appeals from the order of the Court
of Common Pleas of Huntingdon County that denied his timely second petition
filed under the Post Conviction Relief Act (PCRA).[1] After careful review, we
affirm.

Appellant was charged with burglary, robbery, possession of a firearm
by a prohibited person, reckless endangerment, three counts of simple
assault,[2] and other offenses for committing an armed home invasion on
January 29, 2017, in which he and another robber pointed guns at occupants

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541–9546.

[2] 18 Pa.C.S. §§ 3502(a)(1)(ii), 3701(a)(1)(ii), 6105(a)(1), 2705, and
2701(a)(3), respectively.

of the house. Criminal Information; Criminal Complaint, Affidavit of Probable Cause. On June 27, 2017, Appellant pleaded *nolo contendere* to one count of robbery and possession of a firearm by a prohibited person pursuant to a plea agreement that provided that he would be sentenced to 10 to 20 years' incarceration. N.T., 6/27/17, at 1-4. At the same hearing, the trial court sentenced Appellant to an aggregate 10 to 20 years' incarceration in accordance with the plea agreement. *Id.* at 7-8. Appellant did not file any timely post-sentence motion or direct appeal from his judgment of sentence.

On October 12, 2017, Appellant filed a *pro se* letter seeking to file a post sentence motion *nunc pro tunc*. The court treated the letter as a PCRA petition and appointed PCRA counsel (first PCRA counsel), who filed an amended PCRA petition seeking reinstatement of Appellant's post-sentence motion and direct appeal rights. Following a hearing, the trial court denied this first PCRA petition on May 14, 2018. PCRA Court Order, 5/14/18. Appellant filed no appeal from the denial of that first PCRA petition.

On June 29, 2018, less than one year after Appellant's judgment of sentence became final, Appellant filed the instant timely *pro se* PCRA petition. The court re-appointed first PCRA counsel to represent Appellant on this PCRA petition and first PCRA counsel filed an amended PCRA petition on January 10, 2019 that asserted, *inter alia*, that Appellant's trial counsel was ineffective in advising Appellant to enter his negotiated *nolo contendere* plea because the Commonwealth had failed to produce mandatory discovery, including video

evidence, photographs, and witness statements. 1/10/19 Amended PCRA Petition ¶¶21(a), 22-23.

Before any hearing was held or ruling was made on the amended PCRA petition, two changes of PCRA counsel occurred. On April 4, 2019, first PCRA counsel moved to withdraw on the ground that he had a conflict of interest, and the court granted this motion and appointed new PCRA counsel for Appellant (second PCRA counsel) on April 5, 2019. PCRA Court Order, 4/5/19. Second PCRA counsel subsequently moved to withdraw based on breakdown in the attorney-client relationship, and the PCRA court granted the motion and appointed a third attorney (third PCRA counsel) to represent Appellant. PCRA Court Order, 9/4/20. On February 17, 2021, third PCRA counsel filed a supplemental amended PCRA petition asserting the same claims as the amended PCRA petition and adding, *inter alia*, a claim that the Commonwealth had improperly asserted in plea negotiations that it would seek a deadly weapons enhancement if Appellant was convicted after a trial and a claim that the plea colloquy was deficient. Supplemental Amended PCRA Petition ¶¶1, 10-20, 35-37.

The PCRA court held three hearings on the PCRA petition. At the first hearing, on October 18, 2021, trial counsel and Appellant testified. N.T. PCRA, 10/18/21, at 4-73. At the second, December 14, 2021 hearing, Appellant confirmed that he had viewed the video evidence that the Commonwealth had not produced prior to the plea, N.T. PCRA, 12/14/21, at 2, but no testimony

was taken. Following the second hearing, third PCRA counsel withdrew and new counsel (fourth PCRA counsel) entered an appearance as counsel for Appellant. On February 24, 2022, the PCRA court held the third and final hearing, at which the state trooper who had possession of the video evidence testified and Appellant was represented by fourth PCRA counsel. N.T. PCRA, 2/24/22, at 7-23. On October 25, 2022, following further submissions by Appellant and the Commonwealth, the PCRA court entered an order denying the instant PCRA petition. PCRA Court Order, 10/25/22. This timely appeal followed.

Appellant raises the following four issues in this appeal:

I. Whether the [PCRA court] erred in failing to find that [trial counsel] rendered ineffective assistance of counsel in counseling [Appellant] to tender a *no lo contendere* [*sic*] plea that was not voluntarily, knowingly, understandably, and/or intelligently entered since full and complete Pre-Trial discovery had not been obtained including materials that were required to be produced per **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963) before said pleas were entered, which constituted a manifest injustice?

II. Whether the [PCRA court] erred in failing to find that [trial counsel] rendered ineffective assistance of counsel in advising [Appellant] to tender a *no lo contendere* [*sic*] plea that was not voluntarily, knowingly, understandably, and/or intelligently entered pursuant to a plea offer to try and avoid his potentially being sentenced pursuant to the Deadly Weapons Enhancement when the purported firearm was only in the possession of an accomplice, which fact would wholly nullify the potential application of the Deadly Weapons Enhancement per **Commonwealth of Pennsylvania v. Greene**, 702 A.2d 547, 552 (Pa. Super. 1997), which constituted a manifest injustice?

III. Whether the [PCRA court] erred in failing to find that [trial counsel] rendered ineffective assistance of counsel in permitting

- 4 -

[Appellant] to tender a *no lo contendere* [*sic*] plea that was not voluntarily, knowingly, understandably, and/or intelligently entered in light of the hybrid written guilty plea/*no lo contendere* [*sic*] Colloquy plea that was utilized in contravention of the dictates of **Commonwealth of Pennsylvania v Gunter**, 771 A.2d 767 (Pa. 2001), which constituted a manifest injustice?

IV. Whether the [PCRA court] erred in failing to find that [trial counsel] rendered ineffective assistance of counsel in permitting [Appellant] to tender a *no lo contendere* [*sic*] plea that was not voluntarily, knowingly, understandably, and/or intelligently entered in that the Trial Court failed to conduct a sufficient oral inquiry of [Appellant] into the six fundamental questions as specified in the Comment to Rule 590 of the Pennsylvania Rules of Criminal Procedure as well as to follow up in regard to his questionable answers that were contained within the written hybrid Colloquy, which constituted a manifest injustice?

Appellant's Brief at 5-6 (suggested answers omitted).

Our review of an order denying a PCRA petition is limited to determining whether the record supports the PCRA court's findings and whether its decision is free of legal error. **Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. 2015); **Commonwealth v. Velazquez**, 216 A.3d 1146, 1149 (Pa. Super. 2019); **Commonwealth v. Orlando**, 156 A.3d 1274, 1280 (Pa. Super. 2017). We must view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. **Mason**, 130 A.3d at 617; **Commonwealth v. Mojica**, 242 A.3d 949, 953 (Pa. Super. 2020); **Commonwealth v. Stewart**, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*). The PCRA court's credibility determinations, if supported by the record, are binding on this Court. **Mason**, 130 A.3d at 617; **Mojica**, 242 A.3d at 956; **Orlando**, 156 A.3d at 1280.

All of Appellant's issues assert that trial counsel was ineffective with respect to Appellant's *nolo contendere* plea. To be entitled to relief under the PCRA on a claim of ineffective assistance of counsel, the defendant must prove: (1) that the underlying legal claim is of arguable merit; (2) that counsel's action or inaction had no reasonable basis; and (3) that he suffered prejudice as a result of counsel's action or inaction. **Mason**, 130 A.3d at 618; **Velazquez**, 216 A.3d at 1149; **Commonwealth v. Johnson**, 179 A.3d 1153, 1158 (Pa. Super. 2018). The defendant must satisfy all three prongs of this test to obtain relief under the PCRA. **Mason**, 130 A.3d at 618; **Mojica**, 242 A.3d at 955; **Johnson**, 179 A.3d at 1158.

Ineffective assistance of counsel with respect to a plea of guilty or *nolo contendere* can be a basis for PCRA relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. **Commonwealth v. Pier**, 182 A.3d 476, 478 & n.3 (Pa. Super. 2018); **Orlando**, 156 A.3d at 1281; **Commonwealth v. Burkholder**, 719 A.2d 346, 349 & n.4 (Pa. Super. 1998). The test for prejudice where counsel's ineffective representation involves a plea is whether there is a reasonable probability that, but for counsel's error, the defendant would not have entered the plea and would have gone to trial. **Velazquez**, 216 A.3d at 1150; **Pier**, 182 A.3d at 479; **Johnson**, 179 A.3d at 1159.

Appellant's first claim, that trial counsel was ineffective and his plea was involuntary and unknowing because discovery material had not been produced

by the Commonwealth fails because Appellant was fully aware that the material in question had not been produced at the time that he chose to plead *nolo contendere* and Appellant has not shown that this material would have altered his decision to accept the Commonwealth's plea offer. The items that the Commonwealth failed to produce prior to Appellant's plea were three video recordings, four written statements by the victims, and four photographs. PCRA Court Opinion at 13-14; Defendant's Submission on Undisclosed **Brady** Matter at 1-3; N.T. PCRA, 2/24/22, at 8-13. The PCRA court found that Appellant knew at the time of his plea that these items existed and had not been produced. PCRA Court Opinion at 14. That finding is supported by the record. The fact that the Commonwealth had not produced this material was discussed in Appellant's presence at a plea hearing five days before Appellant entered his *nolo contendere* plea and Appellant admitted at the first PCRA hearing that he knew that this material existed and had not been produced when he entered his plea. N.T., 6/22/17, at 12; N.T. PCRA, 10/18/21, at 62-63.

Moreover, Appellant failed to satisfy the requirement that he show prejudice from trial counsel's advice to plead *nolo contendere* before receiving this evidence because he did not show that anything in the withheld items would have caused him to not plead *nolo contendere* and to go to trial. Appellant does not contend that any of the witness statements or photographs in any way weakened the Commonwealth's case against him or that he would

not have pleaded *nolo contendere* if he had received them before his plea. Indeed, the victims' statements confirmed that Appellant was one of the robbers who broke into their house and that Appellant pointed a gun at them. Defendant's Submission on Undisclosed **Brady** Matter, Exs. C-E. Although Appellant asserts in his brief in this Court that the videos would have affected his decision to accept the Commonwealth's plea deal, Appellant's Brief at 20, 27, 29, there is nothing in the record that supports this claim. At the PCRA hearings, Appellant only stated that he had watched the videos after they were produced, N.T. PCRA, 12/14/21, at 2, and never testified or contended that they would have had any effect on his plea decision. Defendant's PCRA Proposed Findings of Fact and Conclusions of Law at 2-6.

Nor was there anything in the videos that had any significant effect on the strength of the Commonwealth's case from which any effect on Appellant's plea decision could be inferred. As the PCRA court found, the videos did not show the home invasion and robbery or even the location where it occurred. PCRA Court Opinion at 15. Rather, the videos were from three stores in the general vicinity, not from the home that Appellant broke into. N.T. PCRA, 2/24/22, at 9-13; N.T. PCRA, 10/18/21, at 20, 42. The Commonwealth's evidence against Appellant consisted primarily of testimony from the victims and the other robber. N.T. PCRA, 10/18/21, at 12, 20, 71; N.T. PCRA, 2/24/22, at 14. Appellant points to nothing in the videos that negated these witnesses' identification of Appellant as one of the two people who committed

the home invasion burglary and robbery or their testimony that Appellant had a gun and pointed it at the victims.

Appellant argues in his second issue that he was induced to plead by the Commonwealth's assertion that it would seek a deadly weapons enhancement that would increase the standard range sentence if he was convicted at trial, that trial counsel was ineffective in failing to advise him that he was not subject to the deadly weapons enhancement, and that his lack of accurate information concerning deadly weapons enhancement invalidates his plea. This argument fails because its premise, that Appellant was not subject to the deadly weapons enhancement, is incorrect.

The deadly weapons enhancement applies where the defendant had a deadly weapon on his person or in his immediate physical control during the commission of the crime or used a deadly weapon to threaten or injure a person. 204 Pa. Code § 303.10(a)(1), (a)(2) (in effect September 25, 2015 to December 31, 2017). Appellant argues that the deadly weapons enhancement could not apply to any of the crimes with which he was charged because the only person who had a gun was the other robber who was with him and that under **Greene**, 702 A.2d at 552-53, possession by an accomplice is insufficient to permit deadly weapons enhancement. The Commonwealth's case, however, was not based on solely on Appellant's accomplice's possession of a gun. To the contrary, the Commonwealth's evidence showed that Appellant had a gun and pointed it at the victims during the home invasion

and robbery. Criminal Complaint, Affidavit of Probable Cause; Defendant's Submission on Undisclosed ***Brady*** Matter, Exs. C-E. Although Appellant would not admit that he had a gun, N.T., 6/22/17, at 19, he admitted that the Commonwealth's evidence was sufficient for a jury to find that he had firearm in his possession during the robbery. N.T., 6/27/17, at 3. The requirements for application of the deadly weapons enhancement were therefore satisfied.

Appellant is correct that the deadly weapons enhancement was not applicable to the possession of a firearm by a prohibited person charge. 204 Pa. Code § 303.10(a)(3)(viii) (in effect September 25, 2015 to December 31, 2017). That, however, does not make the Commonwealth's assertion that it would invoke the deadly weapons enhancement inaccurate or make Appellant's plea involuntary or unknowing. Appellant was not charged with only the two crimes to which he pleaded; he was also charged with numerous other crimes, including burglary, reckless endangerment, and three counts of simple assault. Criminal Information; N.T. PCRA, 10/18/21, at 70-71. Both the robbery charge and all of the burglary, reckless endangerment, and simple assault charges were subject to the deadly weapons enhancement and if he were convicted of those charges, the deadly weapons enhancement would

apply to each of those convictions. 204 Pa. Code § 303.10(a)(4) (in effect September 25, 2015 to December 31, 2017).[3]

Moreover, minor mistakes concerning sentencing exposure that do not materially misstate the defendant's actual risk do not make a plea involuntary or unknowing. **Commonwealth v. Pantalion**, 957 A.2d 1267, 1272 (Pa. Super. 2008); **Commonwealth v. Barbosa**, 819 A.2d 81, 83 (Pa. Super. 2003). Here, any error or misunderstanding that Appellant had concerning his possible sentence from applying the deadly risk enhancement to the firearms offense was minor and immaterial. Appellant's sentencing exposure from the other offenses of which Appellant could have been convicted if he went to trial was far greater than the effect of a deadly weapons enhancement on the firearms charge to which it was inapplicable. For burglary alone, the maximum sentence that Appellant faced was 20 years' incarceration. 18 Pa.C.S. § 3502(c); 18 Pa.C.S. § 1103(1). In contrast, Appellant states that the only effect of application of the deadly weapons enhancement to a possession of a firearm by a prohibited person conviction would be a nine-month increase in the standard range minimum sentence for that offense. Appellant's Brief at 32. Appellant admitted that he was motivated to plead

_____

[3] While simple assault under Section 2701(a)(2) of the Crimes Code is excluded from the deadly weapons enhancement, 204 Pa. Code § 303.10(a)(3)(v) (in effect September 25, 2015 to December 31, 2017), the simple assault charges against Appellant were under Section 2701(a)(3), not Section 2701(a)(2).

not merely by the deadly weapons enhancement, but by the danger of receiving a longer sentence as a result of being convicted of the other offenses. N.T. PCRA, 10/18/21, at 70-71.

Appellant's remaining claims of error assert that Appellant's plea colloquy was inadequate because the written colloquy that Appellant signed was for a guilty plea rather than a *nolo contendere* plea and because the trial court's oral plea colloquy was allegedly deficient. Neither of these issues is meritorious.

To establish that a guilty plea or *nolo contendere* plea is voluntary and knowing, the trial court must conduct a colloquy that shows the factual basis for the plea and that the defendant understands the nature of the charges to which he is pleading guilty or *nolo contendere*, his right to a jury trial, the presumption of innocence, the permissible sentencing range for the charges, and the court's power to reject terms of a plea agreement. **Commonwealth v. Jabbie**, 200 A.3d 500, 506 (Pa. Super. 2018); **Commonwealth v. Hart**, 174 A.3d 660, 667 (Pa. Super. 2017); **Commonwealth v. Morrison**, 878 A.2d 102, 107 (Pa. Super. 2005) (*en banc*); Comment to Pa.R.Crim.P. 590. These matters may also be shown by a written plea colloquy read and signed by the defendant that is made part of the record and supplemented by an oral, on-the-record examination. **Commonwealth v. Reid**, 117 A.3d 777, 782 (Pa. Super. 2015); **Morrison**, 878 A.2d at 108-09; Comment to Pa.R.Crim.P. 590.

Those requirements were fully satisfied here. Before Appellant pleaded *nolo contendere* and his plea was accepted, the trial court conducted two oral plea colloquies and Appellant signed a written plea colloquy. At the first plea hearing, the trial court explained the elements of the robbery and possession of a firearm by a prohibited person charges and Appellant confirmed that he understood what the Commonwealth would have to prove for these charges. N.T., 6/22/17, at 14-15. At that hearing, the trial court also explained and Appellant confirmed his understanding of the sentencing range for those charges. *Id.* In both this oral plea colloquy and the written plea colloquy that Appellant confirmed that he went over with his counsel and signed, Appellant was advised of and confirmed his understanding of his right to a jury trial and the presumption of innocence. *Id.* at 12-17; Written Plea Colloquy at 2-3. In his written plea colloquy, Appellant was advised of and confirmed his understanding of the trial court's power to reject terms of his plea agreement. Written Plea Colloquy at 3. In addition, the Commonwealth set forth the factual basis for the plea at both plea hearings. N.T., 6/22/17, at 18; N.T., 6/27/17, at 2. Although Appellant was unwilling to fully admit those acts and the trial court therefore rejected his guilty plea at the first hearing, N.T., 6/22/17, at 18-20, Appellant admitted at the second plea hearing that the Commonwealth had sufficient evidence to prove these facts, including the fact that he carried a firearm during the robbery, and confirmed that he wished to plead *nolo contendere* to the same charges. N.T., 6/27/17, at 1-4.

Notwithstanding this clear record, Appellant argues that his *nolo contendere* plea was not voluntary and knowing because the first oral colloquy and the written colloquy were for a guilty plea, not for a plea of *nolo contendere*. We do not agree. The charges to which Appellant was pleading *nolo contendere* were the identical charges that were fully explained to him at the first plea hearing and the negotiated sentence that he would receive was the same. N.T., 6/22/17, at 2-3; N.T., 6/27/17, at 1, 4. Before Appellant entered his *nolo contendere* plea, the trial court explained the difference between a *nolo contendere* plea and a guilty plea, explained that the consequences for Appellant and the rights that Appellant gave up were the same, and made clear that the prior oral and written plea colloquies were part of the proceedings. N.T., 6/27/17, at 1-3. Appellant confirmed that he understood that the effect of his *nolo contendere* plea was same as a guilty plea, except that he did not admit guilt. *Id.* at 2. Appellant also confirmed that he still understood that he had the rights that were discussed at the first plea hearing and in his written plea colloquy and that he was giving up those rights by pleading *nolo contendere*. *Id.* at 2-3.

*Gunter*, on which Appellant relies, does not support his contention that his plea was involuntary or unknowing. Neither of the factors on which our Supreme Court based its conclusion that the plea was not voluntary and knowing in that case are present here. In *Gunter*, not only was a written guilty plea colloquy used for the defendant's *nolo contendere* plea, but no oral

plea colloquy was conducted and nothing appeared in the record from which it could be concluded that the ramifications of the *nolo contendere* plea were explained to the defendant. 771 A.2d at 768, 771-73. Here, as discussed above, the trial court conducted an oral colloquy specific to Appellant's *nolo contendere* plea and explained the effect of the plea and in what respects it was the same as and differed from a guilty plea. N.T., 6/27/17, at 2-3. In addition, the PCRA record in **Gunter** showed that the defendant's counsel told him that she was unsure whether she could continue to represent him and try the case if the defendant did not accept the plea bargain. 771 A.2d at 769-72. In contrast, Appellant's trial counsel in this case made clear at the first plea hearing that he was willing to continue to represent Appellant and try the case if Appellant did not choose to accept the Commonwealth's plea offer and trial counsel testified at the first PCRA hearing that he did not pressure Appellant take the plea deal. N.T., 6/22/17, at 10; N.T. PCRA, 10/18/21, at 31-32.

Appellant also argues that the plea colloquy was inadequate because Appellant had answered "no" on the written plea colloquy to the question "Are you satisfied with your representation by your attorney?" Written Plea Colloquy at 5. That argument likewise fails. Trial counsel explained at the first plea hearing that Appellant was not unhappy with counsel's preparation for trial or ability to try the case, but that the reason for that answer was that Appellant had "a bad taste in his mouth about the outcome of the case" and

was upset about one of counsel's actions in the plea negotiations that had no effect on the plea offer or what would occur if the case were tried. N.T., 6/22/17, at 10-12. Although the trial court did not specifically question Appellant about that answer, Appellant was present when trial court made those statements and did not dispute them when he was later colloquied concerning the voluntariness of his plea. Rather, Appellant confirmed to the trial court without reservation that he was not forced to take the plea and understood that he could go to trial. *Id.* at 17.

Moreover, no evidence was introduced at any of the PCRA hearings that suggested that Appellant was unhappy with counsel's preparation for trial or ability to try the case or that Appellant felt compelled to agree to the plea because of a problem with counsel. Trial counsel testified at the first PCRA hearing that the dissatisfaction that Appellant had with him was that Appellant would have liked a more favorable plea deal and that he did not pressure Appellant to plead guilty or plead *nolo contendere*. N.T. PCRA, 10/18/21, at 31-32, 43. At the PCRA hearing, Appellant's primary complaint on the issue of his dissatisfaction with trial counsel was that at the plea hearing, trial counsel, rather than Appellant, stated the reason that Appellant was unhappy with him, not that trial counsel's statement was inaccurate. *Id.* at 64. Indeed, in testifying on one of his PCRA claims that the PCRA court rejected and that he has not pursued in this appeal, Appellant in fact confirmed the accuracy of a significant portion of trial counsel's explanation at the plea hearing. *Id.* at

64-65. To the extent that Appellant stated any reasons for his dissatisfaction with trial counsel at the PCRA hearing that were not explored at his plea hearings or that he contends affected his plea, those are other claims of ineffectiveness of counsel that the PCRA court found meritless, *id.* at 64-68; PCRA Court Opinion at 11-13, and Appellant has not challenged the PCRA court's rulings on those claims in this appeal.

For the foregoing reasons, we conclude that none of Appellant's claims that trial counsel was ineffective with respect to his *nolo contendere* plea has merit. We therefore affirm the PCRA court's order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/07/2023

- 17 -