J-S43039-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES R. HOUSEHOLDER | : | |
| | : | |
| Appellant | : | No. 202 WDA 2018 |

Appeal from the PCRA Order January 9, 2018
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0004746-2012,
CP-65-CR-0004747-2012, CP-65-CR-0004748-2012

BEFORE: STABILE, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED OCTOBER 23, 2018**

Appellant James R. Householder appeals from the order dismissing his first petition pursuant to the Post-Conviction Relief Act[1] (PCRA). Appellant asserts that his trial counsel was ineffective for failing to cross-examine witnesses regarding inconsistencies in their testimony. Appellant also argues that direct appeal counsel was ineffective for failing to raise the inconsistencies in the witnesses' testimony during the appeal and for a delay in providing Appellant with a copy of this Court's disposition of his direct appeal. Further, Appellant contends that the PCRA court failed to consider his response to the notice of intent to dismiss his PCRA petition filed pursuant to Pa.R.Crim.P. 907. We affirm.

_____

[1] 42 Pa.C.S. §§ 9541-9546.

This case began when Detective Scott A. Cardenas of the Lower Burrell Police Department investigated a report received from Westmoreland County Children's Bureau regarding suspected child sexual abuse of victims S.A., E.B., and E.S. A preliminary hearing was held on December 4, 2012, and the magisterial district judge held the case for court. A criminal information was filed regarding each victim.

On January 28, 2013, the Commonwealth filed notice of its intent to consolidate the three above-captioned cases for trial. Jury selection commenced on August 4, 2014, and a trial by jury was conducted August 5, 2014 through August 8, 2014. At trial, the three victims, including Appellant's step-daughter S.A., testified that Appellant repeatedly sexually assaulted them over the course of twelve years.

The victims testified to the following incidents:

At case number 4746 C 2012, female victim, S.A., testified that she was five years old when [Appellant], her stepfather and whom she knew as "dad," started touching her inappropriately. At the time, S.A., her sister, L.A., their mother, and [Appellant] resided in Swissvale, Pennsylvania. [Appellant's] sexual abuse progressed when the family moved to Arnold, Pennsylvania. At that time, S.A. was in second grade and around seven or eight years old. . . .

Around December of 2003, when S.A. was approximately eight years old and in third grade, [Appellant] and S.A.'s mother separated and [Appellant] moved into his mother's house in Lower Burrell. S.A. and L.A. would spend each weekend, including overnights, and evening weekday visits, with [Appellant] at his mother's house. In the Lower Burrell home, [Appellant], on more than one occasion, continued to touch S.A.'s unclothed vagina with his hand and penis. When she was approximately eleven to thirteen years old, [Appellant] continued touching her in that

manner, but he also began to orally lick S.A.'s vagina on numerous occasions.

S.A. hit puberty when she was around eleven to thirteen years old. Around that time, S.A. started developing breasts and S.A. testified that once she developed breasts, [Appellant] would, underneath her clothing, touch her breasts with his hands and orally lick them. . . . S.A. and E.B. met in sixth grade at school and became best friends. When S.A. and E.B. were in eighth or ninth grade, E.B. started going to [Appellant]'s mothers' house in Lower Burrell with S.A. and L.A. . . .

* * *

In early 2012, when S.A. was approximately sixteen years old, [Appellant] moved into his own apartment in Allegheny Township where S.A., L.A., and E.B. continued to visit. At that location, S.A. saw [Appellant] expose himself and masturbate in the kitchen in front of S.A. and E.B. Although S.A. was not aware because she was sleeping, E.B. told S.A. that, while S.A. was sleeping, [Appellant] was doing things to her. S.A. did not tell any adult about the sexual abuse until, in 2012, E.B. told her boyfriend and his family contacted the police. When S.A. became aware that the police had been notified, S.A. told her mother about the years of sexual abuse, although without E.B.'s disclosure, S.A. had no intention of telling anyone.

At Case Number 4748 C 2012, E.S. testified that S.A. and L.A. are her cousins and that she knows E.B. as S.A. and L.A.'s friend. In approximately 2007 or 2008, when E.S. was in fifth grade and about ten or eleven years old, [Appellant] would bring S.A., L.A., and E.B. to E.S.'s father's house in Natrona, PA. [Appellant], S.A., L.A., and E.B. would stay overnight at the house for a few days. E.S. stated that [Appellant] would invade her personal space and touch her in ways that she really didn't want him to in the house. Specifically, E.S. testified that [Appellant] would touch her chest and bottom area by grabbing her with his hands. Regarding [Appellant] touching her chest, E.S. stated that [Appellant] "would pick [her] up and spin [her], or he would grab [her] and not let [her] go." Most of the time, [Appellant] would touch her on top of her clothing, however, occasionally he would touch her underneath her clothing. . . .

E.S. testified that she saw [Appellant] do the same type of things to E.B. and S.A. In the house and on multiple occasions, E.S. saw [Appellant] touch E.B.'s chest underneath and on top of her

- 3 -

clothing with his hand and saw [Appellant] touch E.B.'s butt and crotch on top of her clothing with his hand. . . . E.S. also saw [Appellant] grab S.A.'s chest during horseplay and when S.A. was sleeping. . . .

At Case Number 4747 C 2012, E.B. testified that she and S.A. became friends in sixth grade. During that school year, E.B. started sleeping over with S.A. at [Appellant's] mother['s] house in Lower Burrell. When E.B. was around twelve years old and she and S.A. were sleeping on an air mattress at the Lower Burrell house, [Appellant] started touching her breasts underneath her clothes, but on top of her bra. E B. testified that S.A. said the same thing was happening to her. . . .

* * *

E.B. did not disclose the abuse until she had a breakdown during a self defense class that she was taking in August of 2012. At that time, she disclosed the abuse to her boyfriend and his family, who then contacted the police. E.B. testified that she did not want [Appellant] to touch her, she did not consent to it, and she only returned to the house for the sleepovers because she wanted to still be friends with S.A., protect S.A., and make sure S.A. didn't get hurt. E.B. did not disclose the abuse because she was concerned that S.A. would be mad at her and because they agreed, after disclosing the abuse to each other, that they wouldn't say anything to anyone. E.B. and S.A. have not been friends since E.B. reported the abuse. E.B. testified that [Appellant] touched her inappropriately from the time she was thirteen years old until she was eighteen years old.

Trial Ct. Op., 3/6/15, at 1-10 (citations omitted).

Regarding S.A., the jury found Appellant guilty of attempted rape of a child in Arnold and Lower Burrell,[2] attempted aggravated indecent assault in Swissvale and Arnold, indecent assault-lack of consent in Lower Burrell and Allegheny Township, indecent assault of a child in Swissvale, Arnold and Lower

---

[2] The location of the charged offense is referenced where the age of the victim was established at least in part by the place of the crime.

Burrell, involuntary deviate sexual intercourse (IDSI)-less than 13 years of age in Lower Burrell, aggravated indecent assault in Lower Burrell, endangering the welfare of children, indecent exposure, and corruption of minors.[3]

Regarding E.B., the jury Appellant guilty of attempted aggravated indecent assault in Allegheny Township, indecent assault-lack of consent in Allegheny Township, indecent assault-forcible compulsion in Lower Burrell, Natrona, and Allegheny Township, indecent assault of a child under 16 in Lower Burrell and Natrona, and criminal use of a communication facility, unlawful contact or communication with a minor, indecent exposure, and corruption of minors.[4]

Regarding E.S., the jury found Appellant guilty of indecent assault-lack of consent, indecent assault of a child, indecent assault of a child under 16, and unlawful contact or communication with a minor.[5]

Gregory Cecchetti, Esq., (trial counsel) represented Appellant at trial. Before sentencing, Appellant requested that Attorney Cecchetti withdraw from his representation. Attorney Cecchetti did so, and Brian Aston, Esq.,

---

[3] 18 Pa.C.S. §§ 901 and 3121(c), 901 and 3125(b), 3126(a)(1), (7), 3123(b), 3125(b), 4304, 3127, and 6301, respectively.

[4] 18 Pa.C.S. §§ 901 and 3125(a), 3126(a)(1), (2), (8), 7512, 6318(a)(1), 3127, and 6301, respectively.

[5] 18 Pa.C.S. §§ 3126(a)(1), (7), (8), and 6318(a)(1), respectively.

(appellate counsel) was appointed to represent Appellant at sentencing and on direct appeal.

On November 24, 2014, the trial court sentenced Appellant to an aggregate sentence of twenty-four to forty-eight years of incarceration. Appellant filed a post-sentence motion on December 4, 2014, challenging the weight and sufficiency of the evidence and asserting that the trial court had erred in imposing mandatory minimum sentences under 42 Pa.C.S. § 9718. Post-Sentence Mot., 12/4/14, at 1 (unpaginated). Additionally, the post-sentence motion asserted that trial counsel was ineffective for failing to properly cross-examine the victim-witnesses at trial. *Id.* at 1-2.

Following a hearing, on March 6, 2015, the trial court granted the post-sentence motion as to the illegal imposition of mandatory minimum sentences that were imposed for one count of IDSI and one count of aggravated indecent assault of a child. Trial Ct. Op., 3/6/15, at 21. The trial court denied Appellant's weight and sufficiency of the evidence claims. Appellant's assertion of trial counsel's ineffectiveness was not addressed by the trial court. Thereafter, on April 14, 2015, the trial court resentenced Appellant to the same aggregate sentence of twenty-four to forty-eight years of incarceration.

On June 18, 2015, Appellant filed a petition for allowance of appeal *nunc pro tunc* on the basis that Appellant had not been given his post-sentence rights at the resentencing hearing. **See** Pet. for Allowance of Appeal *Nunc Pro Tunc*, 6/18/15, at 2 (unpaginated). An order granting permission to file an appeal was entered on June 22, 2015, and a notice of appeal at each docket

was filed the next day. Appellant challenged the weight and sufficiency of the evidence to support his convictions. Concise Statement of Errors Complained of on Appeal, 7/14/15, at 1-2 (unpaginated).

As to Appellant's challenge to the sufficiency of the evidence, he contested the proof of the ages of the victims at the time the crimes were committed. This Court found that the ages of the victims were "readily discernable from the record." **Commonwealth v. Householder**, 1001 MDA 2015, 2016 WL 5266628, at *6 (Pa. Super. filed Sept. 22, 2016) (unpublished mem.).

In challenging the weight of the evidence, among other things, Appellant argued that "the testimony between the various alleged victims was conflicting." **Id.** This Court noted that "Appellant ha[d] not indicated which 'inconsistences' within the nearly 700 pages of the notes of testimony from the jury trial render[ed] the victims' testimony 'suspect and unreliable.'" **Id.** at *7. Additionally, trial counsel questioned the witnesses regarding some inconsistences. **Id.** On this basis, this Court found the verdict was not shocking to one's sense of justice and affirmed the judgment of sentence. **Id.**

The *pro se* PCRA petition giving rise to this appeal was docketed on April 28, 2017. The PCRA court appointed counsel, who filed a petition to withdraw as counsel pursuant to **Turner**/**Finley**[6] on August 17, 2017.

---

[6] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

On October 6, 2017, the PCRA court entered an order stating its intent to dismiss the PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. Thereafter, Appellant's response to the Rule 907 notice was docketed on October 26, 2017.[7] In his Rule 907 response, Appellant raised the sufficiency of the evidence and claimed that trial counsel failed to properly cross-examine witnesses at trial. Rule 907 Response, 10/26/17, at 3-4. Appellant disagreed with the trial court's assessment that the inconsistencies in the victims' statements had been previously litigated. *Id.* at 4. Additionally, Appellant raised the issue that he had not received a copy of this Court's disposition of his direct appeal until November 3, 2016, when it was filed on September 22, 2016. *Id.* at 5.

On January 10, 2018, the PCRA court entered an order stating that it had not received a response to the Rule 907 notice, dismissing the PCRA petition, and granting counsel's petition to withdraw. Appellant filed a timely notice of appeal, which was docketed on January 31, 2018. The PCRA court did not order Appellant to file a concise statement of errors complained of on appeal.

Appellant raises the following questions for our review:

1. Was [trial counsel] ineffective for not bringing up [certain inconsistencies] during [Appellant's j]ury [t]rial on August 4-8, 2014?

---

[7] Although entitled "***Turner/Finley*** Brief," Appellant responded to the Rule 907 notice in his filing docketed October 26, 2017 (Rule 907 response).

2. [W]hether [appellate counsel] was ineffective for not showing the[] inconsistent and conflicting testimony and statements in the appeals process?

3. Was [appellate counsel] ineffective for sending [Appellant] a letter saying [that the Superior Court's decision was enclosed], and then apologiz[ing] for the delay because he thought he sent it to [Appellant]?

4. Did the [PCRA c]ourt err, because [Appellant sent] a response to the Intent to Dismiss the [Appellant's] PCRA dated 10/6/2017, in a timely fashion, filed on 10/26/2017?[8]

Appellant's Brief at 3-4.[9]

In his first three issues, Appellant asserts that the PCRA court erred in dismissing ineffective assistance of counsel claims. The following principles govern our review:

We must examine whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

* * *

It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

---

[8] We have reordered Appellant's issues for ease of disposition.

[9] Appellant filed an application for relief after he filed his appellate brief in which he stated his intent to file a second appellate brief that was double-spaced. Appellant's application for relief was denied by an order of this Court on April 9, 2018. Appellant nevertheless attempted to file a second appellate brief. We consider only his first brief in this appeal.

***Commonwealth v. Franklin***, 990 A.2d 795, 797 (Pa. Super. 2010) (citations omitted). Counsel cannot be deemed ineffective for failing to pursue a meritless claim. ***Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). We may affirm the PCRA court's ruling on any basis apparent in the record. ***Commonwealth v. Wiley***, 966 A.2d 1153, 1157 (Pa. Super. 2009).

In his first issue, Appellant asserts the ineffective assistance of trial counsel for failing to cross-examine the victims regarding inconsistencies in their testimony.[10] Appellant's Brief at 13. According to Appellant, because

_____

[10] Appellant characterizes the inconsistencies as follows:

1. According to Appellant, S.A. told the police that she did not recall E.B. describing certain incidents to her, citing Police report #12-298. At trial, however, E.B. testified that "if something happened to [S.A. while she was sleeping], I would tell her." N.T. Trial, 8/6/14, at 392.

2. S.A. testified that the first time she talked to E.B. about the incidents occurring was at the Pittsburgh Mills Mall, but E.B. testified the first time they discussed the incidents was at the Lower Burrell house. N.T. Trial, 8/6/14, at 219, 391.

3. The timeframe when S.A. and E.B. indicated they started talking to each other about the incidents differed. N.T. Trial, 8/6/14, at 229, 391.

4. According to Appellant, S.A. testified that the assaults stopped when she fractured her ankle, citing to Police report #12-298. However, S.A. also testified that nothing was going on medically, Prelim. Hr'g, 12/4/12, at 37, and testified that she was assaulted after her cast was removed. N.T. Trial, 8/6/14, at 244-46.

5. E.B. allegedly indicated that she was not assaulted at a house in Lower Burrell, but S.A. was assaulted there. **See** Prelim. Hr'g, at 12/4/12, at 64. At trial, however, E.B. stated that she was also assaulted at the Lower Burrell house. N.T. Trial, 8/6/14, at 367.

6. According to Appellant, citing to Beaver County Children & Youth Services report and Police report #12-298, S.A. indicated that Appellant forced her to touch Appellant's intimate parts, but also allegedly indicated that Appellant would ask her to touch his penis and she refused.

7. At trial, E.B. testified that abuse at Lower Burrell house only occurred in one room, but she had previously stated that the abuse sometimes happened in the basement. N.T. Trial, 8/6/14, at 353; Prelim. Hr'g, 12/4/12, at 61.

8. S.A. testified to being touched only with Appellant's hands at the Swissvale house where she had lived with Appellant, but she had previously stated that he touched her with his penis as well. N.T. Trial, 8/6/14, at 234-35; Prelim. Hr'g, 12/4/12, at 11.

9. S.A. testified that her memory was clear that she had been abused from the age of five at trial, but she also indicated she did not completely remember. N.T. Trial, 8/6/14, at 235; Prelim. Hr'g, 12/4/12, at 42.

10. S.A. stated that she had seen Appellant touch E.B. at the house in Lower Burrell. Prelim. Hr'g, 12/4/12, at 39. At trial, however, she testified that she did not see anything bad happen between E.B. and the Appellant at the Lower Burrell house. N.T. Trial, 8/6/14, at 212.

11. According to Appellant, S.A. stated that Appellant made her take her clothes off. At trial, however, S.A. indicated that she did not take her clothes off herself. N.T. Trial, 8/6/14, at 242.

12. S.A. testified that at a residence in Natrona, Appellant did not engage in horseplay with her, but E.S. testified that Appellant had touched S.A. inappropriately at the Natrona residence during horseplay. N.T. Trial, 8/6/14, at 263, 289.

---

13.   E.S. stated that she awoke to Appellant in the bed with her and the other victims and that he was touching E.B.'s back, Prelim. Hr'g, 12/4/12, at 87, but at trial, she said he was touching her butt and her crotch.  N.T. Trial, 8/6/14, at 282.

14.   E.S. allegedly described Appellant grabbing her breasts at the Pittsburgh Mills Mall, citing arrest report 20121116M001. At trial, however, E.S. stated that Appellant touched only her butt and waist at the Pittsburgh Mills Mall.  N.T. Trial, 8/6/14, at 295.

15.   E.S. testified at trial during cross-examination that Appellant touched her underneath her clothes, but she had previously stated that Appellant did not touch her underneath her clothing.  N.T. Trial, 8/6/14, at 287-88.

16.   E.B. recalled an incident at Kennywood, allegedly indicating that she became upset, Prelim. Hr'g, 12/4/12, at 76, but, at trial, she indicated that she had not become upset.  N.T. Trial, 8/6/14, at 382-83.

17.   E.B. allegedly told police that she always rode in the front seat, citing Police report #12-298.  At trial, however, E.B. testified to being picked up and sitting in the back seat of the car.  N.T. Trial, 8/6/14, at 384.

*See* Appellant's Brief at 4-11.

We note that Appellant references a police report, "#12-298," an "arrest report 20121116M001," and a report by the Beaver County Children and Youth Agency on September 7, 2012, none of which are contained in the certified record.  Additionally, our review reveals that Appellant mischaracterizes the record on point 4, *see* N.T. Trial, 8/6/14, at 246 (indicating that S.A.'s testimony showed that it was true both that the assaults continued after her cast was removed and that she at times fought back and prevented Appellant from touching her), point 5, *see* N.T. Prelim. Hr'g, 12/4/12, at 64 (indicating E.B. testified that she was assaulted at the Lower Burrell house), and point 8, *see* N.T. Trial, 8/6/14, at 235 (indicating S.A. testified that she could not remember being touched by Appellant's other body parts at the Swissvale house).

the victims were not cross-examined appropriately, he was deprived of his Sixth and Fourtheenth Amendment rights under the United States Constitution. *Id.* at 14.

By way of background, during his cross-examination of the victims, trial counsel pointed out several of the inconsistencies that Appellant references. Trial counsel cross-examined E.B. about the first time she discussed the incidents of sexual abuse with S.A. and the timeframe in which S.A. and E.B. indicated they started talking to each other about the incidents. *See* N.T. Trial, 8/6/14, at 229, 391. Trial counsel cross-examined S.A. about her statements that the assaults stopped when she fractured her ankle and that she was assaulted after the cast was removed. *See id.* at 244-46. Trial counsel also cross-examined S.A. as to her testimony that her memory was clear that she had been abused but that she did not completely remember everything. *See id.* at 235. Additionally, trial counsel cross-examined E.S. regarding Appellant touching her underneath her clothes despite having said he did not previously. *See id.* at 287-88.

Trial counsel, outside the presence of the jury, also stated that he had a strategy not to ask S.A. about being touched at Swissvale and the discrepancy between being touched with Appellant's hands or his penis because it would give her the opportunity to clarify, say more about the

incidents, and revisit that attempted rape charge.[11]  N.T. Trial, 8/6/14, at 248-49.

Additionally, during his closing argument, trial counsel stated the following:

> Now, there were inconsistencies that were said shortly after my client was charged with these crimes.  There were inconsistencies between some of the witnesses saying what they said under oath two years ago and what they are saying this week.  Those inconsistencies, if you believe they are minor and totally not important, you may be free to disregard anything that was said about the inconsistencies.  But if the inconsistency was significant, then you are going to have to rationalize whether somebody's memory two years ago was better than their memory this week.  So, it is up to you as the finders of fact to determine whether any inconsistency is significant or not significant.
>
> Some of the inconsistences involve whether or not my client touched them in an appropriate way—inappropriate, I'm sorry, and whether or not my client touched them by force, whether or not my client touched them when they were sleeping.  Because there were differences.  And I am hoping that your recollection will recall that some of these inconsistencies do not establish that my client touched them the way they testified two years earlier.

N.T. Trial, 8/8/14, at 553-54.

"The scope and vigor of cross-examination is a matter which falls within the ambit of sound trial strategy to be exercised by trial counsel alone." *Commonwealth v. Molina*, 516 A.2d 752, 757 (Pa. Super. 1986).  "Claims of inconsistent statements must be proven by evidence of record or else claims

_____

[11] The Commonwealth ultimately withdrew the attempted rape charge at the Swissvale location.

of ineffectiveness[12] that are based on a witness's alleged inconsistent statements are not properly before a reviewing court." ***Commonwealth v. Begley***, 780 A.2d 605, 635 (Pa. 2001) (citation omitted). Additionally, "trial counsel may make a tactical decision not to question witnesses about alleged inconsistencies so as not to enable witnesses to clarify their testimony and develop plausible explanations for apparent inconsistencies in their testimony." ***Id.*** (citation omitted). Further, counsel will not be found to have acted unreasonably by "not pressing the witnesses about [minor inconsistencies] on cross-examination." ***Id.*** at 636-37 (citation omitted).

In ***Begley***, a defendant who was convicted of kidnapping and murder raised claims of ineffectiveness of trial counsel for failing to cross-examine witnesses at trial as to inconsistencies in their prior statements. ***Id.*** at 635-38. Begley asserted that witnesses made inconsistent statements as between statements in police reports and at trial. ***Id.*** at 638. However, "the police reports were not admitted into evidence and [Begley] fail[ed] to provide . . .

---

[12] The PCRA court suggested that ineffective assistance of counsel based on inconsistencies in the victims' testimony had been previously litigated through Appellant's sufficiency and weight of the evidence claims on direct appeal. ***See*** Notice of Intention to Dismiss Mot. for Post-Conviction Collateral Relief, 10/5/17, at 3. However, we note that in ***Commonwealth v. Collins***, 888 A.2d 564 (Pa. 2005), our Supreme Court clarified that ineffectiveness claims are distinct from claims raised on direct appeal even if the ineffectiveness claim fails for the same factual reason as the direct appeal claims. ***Collins***, 888 A.2d at 574-75.

any other factual evidence" to support the claims.  *Id.*  Thus, the claims failed for lack of arguable merit.  *Id.*

In *Commonwealth v. Baez*, 720 A.2d 711 (Pa. 1998), the defendant was convicted of stabbing the victim to death after raping her.  A friend of Baez's witnessed Baez stabbing the victim.  *Baez*, 720 A.2d at 719.  At the preliminary hearing, he testified that he saw a knife in Baez's hand, but at trial, the witness denied seeing a knife and testified that he only saw Baez's hand moving in a stabbing motion.  *Id.* at 734.  In *Baez*, our Supreme Court noted that "[t]rial counsel will not be deemed ineffective for failing to impeach a witness when such impeachment would only highlight damaging portions of the witness' testimony," and "[t]rial counsel acted reasonably in declining to pursue the inconsistency, since it would have focused the jury on the possibility that [Baez] had a knife in his hand at the time of the murder."  *Id.*

In *Commonwealth v. Greene*, 702 A.2d 547 (Pa. Super. 1997), the defendant was convicted of robbery and other related offenses.  The owner of a jewelry store that Greene attempted to rob testified.  *Greene*, 702 A.2d at 558.  As to inconsistencies between the owner's testimony at the preliminary hearing and trial, this Court found that trial counsel was not ineffective for failing to cross-examine the storeowner on these matters.  *Id.*  This was because the storeowner's testimony was corroborated by two other witnesses, and there was no reasonable probability of a different outcome if the witness was impeached with his prior testimony.  *Id.*

Here, certain instances of inconsistency in the victims' testimony were addressed during cross-examination, and, thus, there is no arguable merit as to Appellant's argument regarding those items. *See Franklin*, 990 A.2d at 797. As to the inconsistences in which Appellant relies on the police and arrest reports and the report by the Beaver County Children and Youth Agency, these items were not made part of the record and no other evidence was presented to show that these inconsistencies existed. Accordingly, this Court cannot properly consider these alleged inconsistencies. *See Begley*, 780 A.2d at 638.

Regarding S.A.'s account of being touched and whether she was touched by Appellant's hands or his penis, trial counsel stated on the record that he had a strategy not to question the victim regarding this discrepancy. *See* N.T. 8/6/14, at 248-49. This was a reasonable strategy in that it prevented the jury from focusing on this part of the testimony and prevented elaboration regarding "damaging portions" of the victim's statements. *See Baez*, 720 A.2d at 734.

As to the remainder of the inconsistences, the victims' testimony corroborated each other, *see Greene*, 702 A.2d at 558, and the inconsistencies were of a minor nature. *See Begley*, 780 A.2d at 636-37.

Thus, although we decline to find that Appellant's claims regarding the victims' inconsistent statements were previously litigated, Appellant's claims fail for all of the foregoing reasons. *See Wiley*, 966 A.2d at 1157.

In his second issue, Appellant asserts that appellate counsel failed to raise the inconsistencies in the victims' testimony during his direct appeal. Appellant's Brief at 13. Following our review, however, we discern no basis to conclude that Appellant demonstrated that the outcome of the appeal would have been different had appellate counsel raised the alleged inconsistencies. *See Loner*, 836 A.2d at 132.

Next, Appellant contends that appellate counsel provided ineffective assistance of counsel by failing to provide Appellant with a copy of this Court's disposition of his direct appeal. As to this issue, Appellant provides no argument in his appellate brief. Accordingly, this issue is waived pursuant to Pa.R.A.P. 2119(a) (indicating that the argument section of an appellate brief shall contain discussion and citation to pertinent authorities for each question argued).

Even if this issue were not waived, Appellant does not claim he asked appellate counsel to file a petition for allowance of appeal in the Pennsylvania Supreme Court. Rather, Appellant's focus in his response to the Rule 907 notice is solely on the fact that he did not receive a copy of the decision. Accordingly, Appellant is entitled to no relief regarding this issue.

In his final issue, Appellant asserts that the PCRA court erred by failing to consider his response to the Rule 907 notice of intent to dismiss his PCRA petition. As to this issue, Appellant provides no argument in his appellate brief. Accordingly, this issue is waived pursuant to Pa.R.A.P. 2119(a).

Even if this issue were not waived, Appellant's response to the Rule 907 notice merely repeated the inconsistencies he initially raised in his PCRA petition. Thus, Appellant is not entitled to relief based upon the PCRA court's oversight of the fact that he filed a Rule 907 response.

For the foregoing reasons, the PCRA court did not err in dismissing Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/2018